[Cite as *Orr v. Brantley*, 2024-Ohio-3245.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

BRENTNEY ORR,

        Petitioner-Appellee,

- vs -

EBONI BRANTLEY,

        Respondent-Appellant.

CASE NO. 2024-L-009

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2023 CS 001540

---

### O P I N I O N

Decided: August 26, 2024
Judgment: Affirmed

---

*Brentney Orr*, pro se, Eastlake, OH (Petitioner-Appellee).

*Mary Catherine Corrigan*, 6555A Wilson Mills Boulevard, Suite 102, Mayfield Village, OH 44143 (For Respondent-Appellant).

ROBERT J. PATTON, J.

{¶1} Appellant, Eboni Brantley ("Brantley"), appeals the decision of the Lake County Court of Common Pleas granting a Civil Stalking Protection Order against her. For the following reasons, we affirm.

{¶2} The following facts were derived from the record including testimony presented at the full hearing held on December 11, 2023.

{¶3} Appellee, Brentney Orr ("Orr"), and Brantley went to the same nursing school. They began studying together in September of 2023, at first over the phone and then in person. A romantic relationship developed, but by October, Orr had ended the

relationship and told Brantley she wanted to remain friends and nothing more. Not long after, sometime towards the end of October of 2023, Brantley and Orr went to a haunted house together. On the way home from the haunted house, the two got into an argument after Orr told Brantley she did not like a girl that she knows. This argument marked the end of the women's friendship and was the catalyst for more volatile interactions that occurred over the next week. Brantley immediately took offense to Orr's comment and while still riding in Orr's car, called a mutual acquaintance. Orr became angry and argued with Brantley. At one point Orr locked Brantley out of the car, keeping Brantley's phone inside with her, while Brantley remained outside of the car without shoes. Brantley testified that at some point during this interaction Orr hit her.

{¶4} The following Friday after the haunted house incident, Brantley confronted Orr at school. Brantley parked near Orr and had another woman in the vehicle with her. The other woman blocked Orr from going to class and initiated an argument with Orr. During the argument between Orr and the woman, Brantley tugged on Orr's jacket. Orr told Brantley not to touch her. Brantley tugged on her jacket again. Brantley testified that Orr was yelling, and that Brantley was attempting to calm her down. The women yelled at each other and then Orr went into the school. When Orr went into the school, a faculty member who witnessed some of the interaction asked what was going on. Orr explained what had happened, and then went to class. Brantley separately went to class. During class, Brantley was talking and saying things Orr could not hear. Orr testified that during class Brantley received a warning from the teacher that she would be dismissed from the class for being disruptive if she continued to talk. Brantley continued making comments, but Orr could not hear what they were. The teacher then asked Brantley to leave. Brantley

2

stood up and pointed at Orr and the teacher both saying more things that Orr was unable to hear.

{¶5} Later that same evening, during the class break, Orr went outside to smoke and discovered that Brantley was there. Brantley was standing outside of her vehicle with other classmates around her. Orr could hear Brantley swearing and saying, "I know hoe." Orr believed the statements were about her. Orr cut her break short and went back into the school. When she went back inside the teacher told Orr that Brantley would not be back. It is unclear from the testimony exactly when and by who, but at some point, during the evening at the school the police were called, and Orr spoke with them. The interaction resulted in Brantley being dismissed from the school, and a no trespassing order being issued for the school against Brantley.

{¶6} That same evening, Orr went home and received several texts and phone calls from Brantley. Orr continued to get phone calls and texts from Brantley coming from different phone numbers. At ten o'clock, Orr began receiving text messages from Brantley's phone number that read, "police ass bitch," and other aggressive comments asking Orr if she wants to fight. Orr told Brantley she did not want to fight and to stop contacting her. Orr blocked Brantley's cell phone number, but she continued to receive texts from Brantley from a different number. Orr testified that Brantley would apologize first, and then text "fuck you" immediately after. Brantley continued to text Orr despite her repeated requests to stop.

{¶7} On Saturday night, Brantley went to Orr's house. The interaction began with Brantley calling Orr around midnight. Brantley told Orr she was going to come to her house. Orr told Brantley not to come to her house and began to ignore the multiple phone

3

calls and text messages that ensued. Brantley continued to call and text Orr, and despite being told not to, came to Orr's house. Orr testified that when Brantley came to her house, her daughter recorded it outside of her window. When Brantley saw she was recording she took off. Brantley testified that Orr invited her to the house. Orr stated when she saw Brantley standing on the sidewalk near her home, she told her to "get the F away from my property." Both agreed that Brantley never actually came in. At that point Orr called the police and made a report. This is the second interaction Orr had with the police about Brantley's behavior. The police contacted Brantley and told her to stop contacting Orr. Brantley did not contact Orr again after that.

{¶8} Orr testified that on Saturday, before she made the police report against Brantley, she reached out to Brantley. Orr said that she contacted Brantley because she felt guilty Brantley had been dismissed from the school due to their fight. Brantley then asked Orr to watch her son, and Orr agreed. Shortly thereafter she declined. Orr testified that when she declined to watch Brantley's son, Brantley became angry and the repeated phone calls and texts began.

{¶9} Images of texts between the two were received into evidence during the December 11, 2023 hearing. Most of the texts consist of arguments between Orr and Brantley. Orr in one text told Brantley, "You really making me scared. [Y]ou calling me names you're calling me threatening me. You texted me telling me you want your way please leave me alone. Don't come to my house." In another text Orr indicated to Brantley that she's blocked five numbers that Brantley has used to text her from and asks her to stop calling her.

Case No. 2024-L-009

**{¶10}** Orr filed a Petition for a Civil Stalking Protection Order ("CSPO"), which was granted ex parte on November 9, 2023. The matter was set for a full hearing on November 27, 2023. Both parties appeared on November 27, 2023. Instead of going forward, however, Brantley requested a continuance to hire counsel. The request was granted, and the hearing was reset for December 11, 2023. At the December 11th hearing, both parties appeared. Brantley again requested a continuance to hire counsel. The trial court denied Brantley's request, stating "I had mentioned to you last time that I would certainly give you a continuance, but to make sure that your counsel was either available or contact the Court to request a continuance to notify [Orr] so she didn't appear and be ready to go and then find out that you're not able to go forward." The trial court told Brantley a request for a continuance would be denied, and then asked, "are you prepared to go forward or do you want a continuance?" Brantley replied, "I'm prepared; ready to go."

**{¶11}** The hearing went forward. An order granting the protection order was filed on January 18, 2024.[1] Brantley timely appeals that January 18, 2024 order.

**{¶12}** On appeal, Brantley asserts two assignments of error:

**{¶13}** [1.] "The trial court abused its discretion in failing to grant a continuance to allow the respondent to secure counsel."

**{¶14}** [2.] "The trial court erred by granting the civil stalking protection order."

### Denial of Brantley's Request for Continuance

**{¶15}** In Brantley's first assignment of error, she asserts that the trial court erred by not granting her request for a continuance to obtain counsel. Courts have broad

---

1. R.C. 2903.214(E)(2)(a) allows the trial court to issue a CSPO up to five years. However, here the protection order granted on January 18, 2024, protects Orr for one year from the date of issuance, until November 9, 2024.

Case No. 2024-L-009

discretion when deciding to grant or deny a continuance. "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67. "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." (Citations omitted.) *Id.* at 67. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶16} Brantley cites *R.H. v. J.H.*, 2020-Ohio-3402 (9th Dist.), in support of her argument that the denial of her request was arbitrary and an abuse of discretion. *R.H.* is factually distinguishable from this case. In *R.H.*, after a failure of the first service attempt, the appellant was successfully served the day immediately preceding the hearing. This left the appellant only a day to obtain counsel. When appellant in *R.H.* arrived at the hearing, he asked for a continuance to obtain counsel after the hearing had already begun. The trial court, in that case, denied the appellant's request because they had already been in the hearing for approximately 30 minutes before the request was made. The parties at that point were involved in negotiations for a proposed agreement. During the negotiations, the appellant apologized to the trial court, and requested time to get an attorney. The request was denied. The appellate court reversed on appeal and deemed the denial an abuse of discretion because in that circumstance, it was so arbitrary that it violated due process. The trial court used *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) as its authority, and articulated the reasoning set forth in *Unger* when it cited, "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case,

6

particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67. Therefore, the appellate review of whether or not a trial court abused its discretion in granting or denying a request for a continuance is fact sensitive.

{¶17} In the present case, Brantley had already been granted a continuance once at the initial November 27, 2024 hearing to obtain counsel. At the December 11, 2024 hearing, the trial court noted that a previous continuance had already been granted. The trial court told Brantley that she must come prepared with counsel at the next hearing so that Orr would not arrive, be ready to go, only to have the hearing rescheduled again. Brantley contends that the trial court told her the continuance would have been granted had she called the court before arriving at the hearing, and therefore the denial once she arrived at the hearing was arbitrary. However, the trial court's denial of Brantley's second oral request for a continuance was consistent with the warning given at the time of the first request. Similarly, had the continuance been requested prior to the parties' arrival, it would have prevented Orr from arriving prepared and being turned away a second time. This appears to be consistent with the intent of the initial warning.

{¶18} Further, as noted, there are no tests for deciding when a denial of a continuance is arbitrary. Instead, there are a set of considerations.

> In evaluating a motion for continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for a continuance; and other relevant factors, depending on the unique factors of each case." (Citations omitted.)

7

*Unger* at 67-68.

{¶19} Considering the factors articulated in *Unger*, this Court notes that the trial court had already granted Brantley's first continuance to find counsel. The trial court gave Brantley a warning that if she wanted another continuance to call the court ahead of time to prevent the parties from appearing only to have to postpone again. The parties arrived at the December 11, 2023 hearing and Brantley had not made her request prior to that hearing as instructed. Brantley had already been given two additional weeks to obtain counsel. On appeal, an appellate court should not reverse a decision on a motion for a continuance unless it can be shown that the trial court abused its discretion. Here, the trial court acted consistently with its warning to Brantley. If Brantley wanted more time, she was required to request it prior to the hearing. Brantley did not request the continuance prior to the hearing, so it was denied. It cannot be said that the trial court abused its discretion in denying Brantley's request.

{¶20} Accordingly, Brantley's first assignment of error is without merit.

### Granting of the CSPO

{¶21} In Brantley's second assignment of error, she contends that the trial court should not have granted the CSPO against her. This Court recently explained the process for granting a CSPO:

> The proceedings for granting a CSPO are governed by Civ.R. 65.1. *Post v. Leopardi*, 11th Dist. Trumbull No. 2019-T-0061, 2020-Ohio-2890, ¶ 10. A trial court may refer CSPO proceedings to a magistrate. Civ.R. 65.1(F)(1). When a petitioner requests an ex parte CSPO, the magistrate shall conduct the ex parte hearing and, upon conclusion of the hearing, deny or grant an ex parte CSPO. Civ.R. 65.1(F)(2)(a). The magistrate shall then conduct a full hearing and, upon conclusion of the hearing, deny or grant a protection order. Civ.R. 65.1(F)(3)(a). * * *

8

Case No. 2024-L-009

*A party may file written objections to the trial court's adoption, modification, or rejection, or any terms of the protection order, within fourteen days of the court's filing of the order.* Civ.R. 65.1(F)(3)(d)(i). The party filing objections has the burden of showing that an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion * * * Civ.R. 65.1(F)(3)(d)(iii). (Emphasis added.)

*Moyer v. Robinson*, 2023-Ohio-764, ¶ 29-31 (11th Dist.).

**{¶22}** A thorough review of the record reveals that no objections were made to the Judgment Entry Adopting Magistrate's Findings of Fact and Conclusions of Law, filed on January 18, 2024. This Court has held that without timely filed objections pursuant to Civ.R. 65.1(G), a respondent cannot challenge the decision of a trial court to adopt a CSPO on appeal. *Post v. Leopardi*, 2020-Ohio-2890, ¶ 25 (11th Dist.).

**{¶23}** Consistent with this Court's existing precedent, as no objections were filed pursuant to Civ.R. 65.1(G), the decision of the trial court to grant the CSPO must not be disturbed. Accordingly, Brantley's second assignment of error is not sustained.

**{¶24}** For the foregoing reasons, we affirm the decision of the Lake County Court of Common Pleas.

EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-L-009